UNITED STATES of America, Plaintiff,

v.

Virgil Jack DOWDY, Defendant.

Crim. No. 88–CR–111.

United States District Court,
D. Colorado.

June 13, 1988.

Frederic S. Stephens, Asst. U.S. Atty., Denver, Colo., for plaintiff.

John S. Evangelisti, LaFond & Evangelisti, Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

This matter is before the court on the defendant's motion to suppress evidence on which an evidentiary hearing was held on June 3, 1988. Testifying on behalf of the government were United States postal inspectors Lee Morris and Thomas A. Rebot-

taro. Defendant did not testify; nor did any witness testify on his behalf. The parties have briefed the issues.

Based on the evidence submitted at the hearing, and for the limited purpose of ruling on the motion to suppress, I find the following facts to be true: Defendant worked as a mail carrier at the Ivywild Post Office Station in Colorado Springs, Colorado ("postal station"). After receiving numerous complaints concerning missing greeting card mail on routes handled by the defendant, United States postal inspectors suspected that the defendant, or one or both of two other carriers, might have stolen the missing mail. Greeting card mail frequently contain gift money.

On the morning of February 11, 1988, two test letters containing money and appearing to be greeting cards were placed with the other mail to be carried by the defendant that day. Both test letters were "undeliverable:" One was addressed to a non-existent street number; the other was addressed to someone who had moved without leaving a forwarding address. Additionally, one of the test letters contained an electronic beeper that not only enabled the postal inspectors to monitor that letter's location but also was set to emit a signal when the letter was opened. The two other suspected postal employees were similarly tested.

Defendant arrived at work early in the morning on February 11, 1988, and sorted his mail. The other two employees who were being tested also came to work that day. Subsequently, the defendant left the postal station with the mail he was supposed to deliver, including the test letters. He then spent approximately the next five hours delivering mail along his route. Postal inspectors watched him the entire time he was delivering mail.

The Ivywild Post Office Station manager, Ed Duran, was cooperating with the postal inspector's investigation. At some point, Duran and the postal inspectors determined that the other two postal employees had properly disposed of their test letters. The investigation then focused solely on the defendant.

At approximately 2 p.m., the defendant returned to the the postal station. He showed Duran a plastic bag containing a frozen water fowl that he claimed to have received from a customer. Although the testimony at the hearing indicated that the frozen bird was a duck, the defendant, in his written closing argument, insists that the bird actually was a goose. However, whether the bird was a duck or a goose is irrelevant to this motion. A short time later, the defendant left the postal station to make a special delivery. After the defendant left, the station manager opened the plastic bag and discovered numerous greeting cards, along with the frozen fowl.

Subsequently, the defendant returned to the postal station and worked for a while. At approximately 3 o'clock p.m., the defendant's shift ended and he left the station on foot carrying the plastic bag. Duran then informed Inspector Morris that the defendant had failed to place the undeliverable test letters into the distribution receptacle as he should have done, and that the letters were nowhere else in the postal station.

Inspector Morris was sitting in his parked car watching as the defendant walked away from the station. The volume of the beeper's signal increased as the defendant came closer to Morris' car. When the defendant was almost at the car, he was apprehended by Morris, Inspector Rebottaro, and other postal inspectors. Defendant was placed against the side of the car and handcuffed. While this occurred, Inspector Rebottaro told the defendant that he was under arrest. The inspectors then searched the defendant and the plastic bag.

While searching the defendant, the inspectors found 14 letters strapped between the defendant's left leg and left sock. In response, the defendant exclaimed: "You guys sure got me good. I might as well help you out." Defendant then placed his right leg on the car's fender, and pulled his right pant leg up, revealing 18 more letters rubber banded to the defendant's right leg. The search of the plastic bag disclosed 22 greeting cards in company with the duck.

Postal inspectors additionally found a pipe and what appeared to be marijuana on the defendant's person. In response to this discovery, the defendant volunteered the statement: "You can put that back in my pocket, you already got enough on me." There is no charge in the instant indictment related to the marijuana.

Defendant was not advised of his *Miranda* rights until after the inspectors had searched both his person and the plastic bag.

The indictment charges the defendant with five counts of mail embezzlement, in violation of 18 U.S.C. § 1709.[1] Each count charges that he embezzled a separate letter. Counts one through four of the indictment charge violations with respect to letters found strapped to the defendant's legs. Count five relates to a letter found in the plastic bag with the duck (or goose).

In his motion to suppress, the defendant contends that without a warrant he was subjected to electronic surveillance, arrested, and searched, all in violation of the Fourth Amendment. Additionally, he asserts that his statements made during the arrest and search were involuntary. Specifically, the defendant requests suppression of: (1) evidence obtained as the result of the illegal electronic surveillance, arrest and search of the defendant and the plastic bag; and (2) the two inculpatory statements he made during the arrest and search.

In response, the government argues that no warrants were required for the surveillance, the arrest, or the search of either the defendant or the plastic bag. The government additionally contends that the defendant volunteered the statements made during the arrest and search.

I shall discuss separately the defendant's arguments for suppression.

### 1. *Electronic Surveillance.*

■ Defendant argues that the government subjected him to unlawful electronic surveillance without probable cause or warrant when it planted the beeper in one of the two undeliverable test letters. He relies on Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. § 2510 *et seq.* to support this contention. However, Title III is inapplicable to the type of transmitter surveillance used by the postal inspectors in this case because there was no monitoring of the defendant's communications.

■ Nevertheless, the warrantless use of an electronic beeper for surveillance may, under certain circumstances, violate the Fourth Amendment's proscription against unreasonable searches. *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). Use of an electronic beeper without a warrant however does not violate the Fourth Amendment if the beeper reveals only information that could be obtained through visual surveillance. *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). In *Knotts*, the Court held that no warrant was necessary for a beeper that used to monitor an automobile's movements because the law enforcement agents could have tracked it by visual surveillance.

Defendant in the present action argues that *Knotts* is distinguishable because here the beeper was capable of being used to inform the postal inspectors if and when the test letter containing the beeper was being opened, an act not necessarily evident from visual surveillance alone. Here that feature of the beeper did not come into play because the test letter was not opened.

Importantly, however, the Fourth Amendment's proscription against unreasonable searches applies only when a per-

**1.** Section 1709, 18 U.S.C., provides in part:
"Whoever, being a Postal Service officer or employee, embezzles any letter, post card, package, bag, or mail, or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service, or forwarded through or delivered from any post office or station thereof ...; or steals, abstracts, or removes from any such letter, package, bag, or mail, any article or thing contained therein," shall be guilty of an offense against the United States.

son's legitimate expectation of privacy has been invaded by the government. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The determination of whether a person had a legitimate expectation of privacy normally embraces two discrete questions. First, has the individual, by his conduct, exhibited a subjective expectation of privacy? Second, is the individual's subjective expectation of privacy one that society recognizes as reasonable, *i.e.,* is the individual's expectation, viewed objectively, justifiable under the circumstances. *Id.* 460 U.S. at 280–81, 103 S.Ct. at 1084–85; *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

I find and conclude that the instant defendant did not have a legitimate expectation of privacy in the test letter containing the beeper. The beeper was placed in a piece of mail lawfully deposited into postal channels. That mail was not addressed to the defendant, and he had no lawful ownership or possessory interest in it, he had mere custody for the very limited purpose of delivery. Additionally, the monitoring of the beeper was to occur, and did occur, only while the test letter was in postal channels. Indeed, the inspectors made sure that they arrested the defendant before he got to either his car or his home in order to avoid any monotoring of the test letter in a place where the defendant might have a legitimate expectation of privacy.[2]

Therefore, the postal inspectors did not need to obtain a warrant prior to placing the beeper in the test letter, or monitoring that letter. Accordingly, the motion to suppress evidence obtained through unlawful electronic surveillance must be denied.

### 2. *Warrantless Arrest.*

■ Defendant contends that his arrest was improper because it was effected without a warrant based on probable cause.

Subject to certain exceptions not relevant here, a law enforcement officer, with general authority to make arrests, may arrest a person without a warrant if the officer has probable cause to believe that the suspect has committed a crime. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Easton v. City of Boulder,* 776 F.2d 1441 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

In the present action, the evidence supporting the postal inspectors' determination that there was probable cause to arrest the defendant included: (1) prior customer complaints indicating that the defendant, as well as other postal employees, may have stolen mail prior to February 11, 1988; (2) the postal station manager's informing the inspectors that the defendant's test letters had not been left inside the post office when he left work; (3) the branch manager's telling the inspectors that the defendant had numerous opportunities to properly dispose of his test letters; and (4) the beeper's corroboration of the fact that the defendant had left work for the day carrying the letter containing the beeper. *Cf. United States v. Costello,* 604 F.2d 589 (8th Cir.1979) (postal inspectors had probable cause to arrest postal employee for embezzling mail in violation of 18 U.S.C. § 1709 where inspectors directly observed the employee's conduct in picking up test letter containing marked currency).

I find and conclude that the above-described evidence provided the inspectors probable cause to arrest the defendant for mail embezzlement. Therefore, the arrest was lawful. Accordingly, the motion to suppress evidence obtained as a result of an unlawful arrest must be denied.

### 3. *Search of the Defendant.*

■ Defendant alleges that the warrantless search of his person violated his Fourth Amendment rights.

**2.** Defendant asserts that the beeper also tracked his private actions, such as using the restroom facilities at the postal station. However, the beeper's signals could only inform the postal inspectors of the general location of the test letter containing the beeper, and whether the test letter was being opened. Thus while the beeper could reveal that the test letter was somewhere in the postal station, it could not disclose the precise location of the test letter within the station.

As discussed above, the postal inspectors had probable cause to arrest the defendant. Therefore, the pat down search of his person was proper as a search incident to a lawful arrest. *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). *Cf. Costello, supra,* 604 F.2d 589 (postal inspectors' warrantless search of postal employee in restroom was legal where inspectors had probable cause to arrest the employee under 18 U.S.C. § 1709).

### 4. *Search of the Plastic Bag.*

Defendant argues that the search of the plastic bag containing several letters, as well as the frozen bird, violated his Fourth Amendment rights.

More specifically, he argues that: (1) the inspectors should have obtained a warrant prior to searching the bag; and (2) the station manager's earlier warrantless search of the bag impermissibly tainted the postal inspectors' search of the bag at the time of the arrest.

■ I find and conclude that the postal inspectors did not need a warrant to search the plastic bag when they arrested the defendant. As part of their search of a suspect incident to a lawful arrest, the police may search the area within the arrestee's "immediate control." *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968). Defendant was carrying the plastic bag at the time of his arrest. Thus the bag was in his immediate control, and, therefore, the search of the bag was incident to a lawful arrest.

■ I need not determine whether the station manager's prior search of the plastic bag violated the Fourth Amendment because even assuming, *arguendo,* that it did, I find that the postal inspectors would have searched the bag when they arrested the defendant regardless of the station manager's prior search. Under the doctrine of "inevitable discovery," evidence obtained in violation of the Fourth Amendment is admissible if the prosecution can establish by a preponderance of the evidence that the evidence ultimately or inevitably would have been discovered by lawful means. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

In the present case, the postal inspectors had probable cause, at the time of the arrest, to believe that the defendant had embezzled mail during his shift, and that the stolen items were in his possession. The plastic bag was in the defendant's possession when he was arrested, and there can be little doubt that the inspectors would have searched the bag looking for the stolen mail, irrespective of whether the station manager had done so earlier in the day. Thus the inspectors inevitably would have discovered the bag and its contents at the time of the arrest.

### 5. *Statements Made During Arrest and Search.*

Defendant requests suppression of the following statements that he made to the postal inspectors at the time of his arrest and search: (1) "You guys sure got me good. I Might as well help you out;" and (2) [with respect to the alleged marijuana] "You can put that back in my pocket, you already got enough on me." [3]

The test for admissibility of an inculpatory statement involves a two-part inquiry. First, the court considers whether the government elicited the statement in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Upon finding compliance with *Miranda,* the court next must rule on whether the statement was voluntarily made. *United States v. Sims,* 719 F.2d 375 (11th Cir.1983).

■ Initially, I find and conclude that the two statements were not elicited in violation of *Miranda.* The warnings required by *Miranda* need only be given

---

3. Defendant also requests suppression of certain post-arrest statements he made on the ground that he was not timely brought before a magistrate. In response, the government states that, out of an overabundance of caution, it will not use, in its case-in-chief, statements made after the defendant invoked his right to counsel. Additionally, no evidence on this issue was introduced at the hearing. Thus this motion is moot. If necessary and appropriate, at trial the defendant may timely object to any such evidence, if offered, and may renew his motion to suppress post-arrest statements.

prior to custodial *interrogation.* 384 U.S. at 444, 467–68, 471, 86 S.Ct. at 1612, 1624–25, 1626. The Court in *Miranda* defined "interrogation" as "questioning initiated by law enforcement officers." *Id.* at 444, 86 S.Ct. at 1612.

Here, the statements at issue were not made in response to questions asked by the postal inspectors. Rather, each statement was a spontaneous utterance. Courts have sustained the admissibility of spontaneous utterances made immediately following a legal arrest. 2 J.G. Cook, *Constitutional Rights of the Accused* § 5:25 (2d ed.1986). For example, in *United States v. Compton,* 428 F.2d 18 (2d Cir.1970), *cert. denied,* 401 U.S. 1014, 91 S.Ct. 1259, 28 L.Ed.2d 551 (1971), the defendant made the following statement at the time of his arrest before being read the *Miranda* warnings: "I don't intend to hurt you guys, I just want to kill President Nixon." The trial court admitted the statement into evidence. In affirming the decision below, the Second Circuit reasoned that the statement "was a spontaneous utterance and not the result of police interrogation." 428 F.2d at 22.

As in *Compton,* the statements here at issue were not made in response to interrogation. Therefore, *Miranda* does not preclude their use at trial.

Next I consider whether the statements were voluntarily made. In order to be voluntary, an incriminating statement must be the product of a rational intellect and free will. *United States v. Holmes,* 632 F.2d 167 (1st Cir.1980). A court must consider the totality of the circumstances in determining whether an inculpatory statement was voluntarily made. *United States v. Hackley,* 636 F.2d 493 (D.C.Cir. 1980). Factors to be considered in making a determination of voluntariness include, but are not limited to, the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation. *United States v. Mast,* 735 F.2d 745, 749 (2d Cir. 1984). The government must prove the voluntariness of a statement by a preponderance of the evidence. *United States v. Falcon,* 766 F.2d 1469 (10th Cir.1985).

I find and conclude that the government met its burden of proving that the statements made by the defendant during his arrest and search were voluntarily made. As discussed above, the statements were not given in response to questions asked by the postal inspectors. Additionally, uncontradicted evidence at the hearing established that the statements were the products of a rational intellect and free will. Therefore, the defendant's motion to suppress the statements he made during his arrest and search must be denied.

Accordingly, IT IS ORDERED that the defendant's motion to suppress is denied in its entirety.