Tony DAVIS, Plaintiff,

v.

Ruth TAMBURO, Agent Capacity; Robert McNeely, Official Capacity; Randal Walker, Official Capacity; Lonnie Myles, Official Capacity; Vern Lester, Official Capacity; and the City of Little Rock, Defendants.

No. LR–C–91–449.

United States District Court,
E.D. Arkansas, W.D.

May 6, 1993.

Reginald S. McCullough, McCullough Law Firm, Little Rock, AR, for the plaintiff.

Jeanette L. Hamilton, City Atty's Office, Little Rock, AR, for defendants.

## ORDER

ROY, District Judge.

Plaintiff has brought this matter pursuant to 42 U.S.C. § 1983, saying that rights guaranteed him under the Constitution were violated by officers and other City of Little Rock employees when he was mistakenly arrested for theft. Plaintiff has also brought related state claims. Now before the Court is the defendants' motion for summary judgment. For the reasons set out below, said motion will be granted.

## I.

The pertinent facts not significantly disputed are summarized as follows:

About 4:30 p.m. on July 24, 1990, defendant Ruth Tamburo, a security guard employed by the City of Little Rock's Advertising and Promotion Commission, witnessed a black male loading a carpet from the Excelsior Hotel [1] into an automobile bearing the Arkansas license number of "RRX 577" driven by a black female. She then related what she had seen to employees of the Excelsior. This apparently resulted in Keith Smith, a maintenance employee at the hotel, identifying the black male as being the plaintiff, Tony Davis, who was an employee of the hotel.

Floyd Spencer, the evening manager at the hotel,[2] then contacted the Little Rock Police Department about the theft of the carpet. In response, Officers Robert McNeely and Randal Walker, both defendants in this matter, went to the hotel to investigate, then completed a report on the incident. That was apparently the extent of their involvement in the matter.

The following day, the hotel manager, Dennis Earles, called the police about the incident. Defendant Officer Vern Lester was dispatched to the scene and talked with

1. Ms. Tamburo was working at the Statehouse Convention Center, which adjoins the Excelsior.

2. Mr. Spencer was originally a defendant in this case, along with the Excelsior and Dennis Earles,

the hotel manager. All three were dismissed with prejudice at the plaintiff's request by this Court's previously entered Order.

Mr. Earles, who specifically identified plaintiff Tony Davis as the person who had stolen the carpet. Officer Lester called this identification in to department detectives, who instructed Lester to bring Davis to the Detective Bureau for questioning. Lester then did as he was instructed.

While Davis was being held in the Interrogation room at the station, Detective Lonnie Myles, also a defendant in this matter, reviewed the report filled out by the investigating officers the night before. At this time he spoke on the phone with Ms. Tamburo, after which he was left with the impression she had identified the man taking the carpet as Tony Davis. Combined with Mr. Earles' unequivocal identification of the man as Davis, this caused Detective Myles to charge Mr. Davis with theft of property and to place him in the City jail.

That same day, Ms. Tamburo came down to the station for an interview. After talking with her, Detective Myles concluded that she was depending on the conclusions of hotel employees Spencer and Smith that the culprit was in fact Mr. Davis. She failed to positively identify Mr. Davis from a photo lineup of six pictures and picked the wrong man from a physical lineup in which Mr. Davis appeared. This information was passed on to Myles' supervisor, who ordered Myles to inform the Prosecutor's Office.

Eventually, the Prosecutor decided to *"nol pross"* the charge against Mr. Davis. Whether this decision was based on Ms. Tamburo's inability to make a positive identification of Mr. Davis, or instead on the determination that the theft was in fact perpetrated by the son of the woman to whom the identified automobile was registered, or some combination of the two, is not clear from the pleadings.

## II.

Of course, the standard to be applied when deciding summary judgment motions is whether there exists a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ There is no question here of Mr. Davis's innocence.

That fact, however, is neither dispositive of nor relevant to the ultimate issue in the case—whether there was probable cause to arrest [the plaintiff for the crime]—since "[t]he Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan,* 443 U.S. 137, 145 [99 S.Ct. 2689, 2695, 61 L.Ed.2d 433] (1979). [Other citations omitted] The Constitution prohibits only arrests that are not based on probable cause. That standard was defined by the Supreme Court in *Beck v. Ohio,* 379 U.S. 89 [85 S.Ct. 223, 13 L.Ed.2d 142] (1964):

> Whether [an] arrest was constitutionally valid depends ... upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person arrested] had committed ... an offense.

*Id.* at 91, 85 S.Ct. at 225; *see also Michigan v. DeFillippo,* 443 U.S. [31] at 37, 99 S.Ct. [2627] at 2632 [61 L.Ed.2d 343] [(1979)].

*Clay v. Conlee,* 815 F.2d 1164, 1167–68 (8th Cir.1987). The Court now examines the information possessed by the officers.

The initial police report prepared the night of the theft by Officers Walker and McNeely was based on the statement of night manager Spencer. He told the police that Ms. Tamburo had seen Mr. Davis loading the carpet into a car. The report reveals that the officers "were unable to make contact with [her]." Thus, Walker and McNeely had no reason to consider the identification of Davis to not be "trustworthy" at the time the report was prepared.[3]

The following day when Officer Lester went to the hotel in response from a call, he was told unequivocally by manager Earles that Mr. Davis had been identified as the one removing the carpet. A "reasonable man" in Officer Lester's position would have no rea-

---

**3.** The report indicates it was completed and signed at 6:21 p.m. on July 24, 1990.

son to believe that information not trustworthy.

Based on that information and the report that had been prepared the night before, Detective Myles ordered Lester to bring Mr. Davis in for questioning. Plaintiff has not contested with contrary evidence Detective Myles' position that while asking Ms. Tamburo on the phone to come down to make a statement (this was the first time he had actually spoken with her), nothing she said to him gave him any reason to think that the reports indicating that she had actually identified the thief as being Mr. Davis were in error. It was only after interviewing her in person that he came to understand that she could only identify the thief as a black male.

The plaintiff points to the reporting of the car's license number at the time of the initial investigation as evidence that would vitiate the existence of probable cause. In fact, a check of the license number prior to the preparation of the original police report the evening of the 24th revealed the car to be registered to a Carolyn Brown of Little Rock and that information was included in that report.[4] Ms. Brown later was found to be the mother of Barry Anderson, the person eventually identified as person who stole the carpet.

However, the fact that the car was being driven by a Carolyn Brown (it had to be somebody) did not vitiate in any way the apparent reliability of Mr. Davis' identification at the time the police were deciding whether to arrest him, despite the fact that it was by this information that the identity of the actual thief was eventually determined.

The Court regrets that Mr. Davis has had to suffer through this embarrassing episode but finds as a matter of law that at the time of Mr. Davis' arrest, probable cause for that arrest existed. "That being the case, his arrest did not deprive him of any federal constitutional right, and he thus has no cause

of action ... under § 1983." *Clay v. Conlee,* 815 F.2d at 1169.

 Defendants are likewise entitled to judgment on plaintiff's state law claims for false arrest and false imprisonment. Furthermore, because a resolution of the plaintiff's other pendent state claims would require a complete trial of the facts, they are dismissed without prejudice to the right to refile in the appropriate state court. "[W]hen the federal claim drops out before trial, and a complete trial of the facts would be necessary to determine the state claim, the federal court should not proceed with such a trial. Rather, the parties should be remitted to the state courts for this purpose." *Curtis v. Sears, Roebuck & Co.,* 754 F.2d 781, 785 (8th Cir.1985). The case is dismissed.[5]

IT IS SO ORDERED.

---

4. The Court finds it disturbing that when the defendants submitted their motion for summary judgment, and attached as an exhibit thereto a portion of the July 24 police report, the portion of the report identifying Carolyn Brown as the owner of the car into which the carpet was loaded was omitted. The Court was under the impression that it had seen the entire report until the plaintiff supplied the missing page as an exhibit to his responsive pleading. Defendant's exhibit should have been identified as being incomplete. The better practice would have been to have included *all* of the report, even that portion not helpful to the defendants' case.

5. The timeliness of plaintiff's supplemental brief on the issue of qualified immunity is moot.