**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dewayne A. MITCHELL, Defendant–
Appellant.**

No. 00–5733.

United States Court of Appeals,
Sixth Circuit.

July 20, 2001.

Before SILER and GILMAN, Circuit Judges; GIBBONS, District Judge.*

PER CURIAM.

Defendant Dewayne A. Mitchell appeals his conviction and sentence of 120 months imprisonment following a guilty plea to one count of possessing with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). This plea reserved the right to appeal the denial of his motion to suppress evidence obtained during his warrantless arrest. Upon *de novo* review of the evidence "in the light most likely to support the district court's decision," the denial of the motion to suppress was not erroneous as the arrest was supported by probable cause. *See United States v.. Reed*, 141 F.3d 644, 648 (6th Cir.1998)(internal quotations and citation omitted); *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir.1998). We affirm.

On April 15, 1999, Officer Bruce Conkey received two telephone calls from Rochelle Evans, Mitchell's ex-girlfriend. She stated

* The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

that Mitchell and another individual named Rhondell Grogan were selling crack cocaine from the Executive Inn, a local motel. After indicating that Grogan's maroon van was being used to deliver the drugs, Evans gave Mitchell's pager number to Officer Conkey.

Officer Conkey was familiar with Mitchell's previous involvement in drug-related activities and knew that Evans had criminal charges pending against her. Nonetheless, he soon placed a call to the pager from an undercover telephone line belonging to the Knoxville Police Department, asked for Mitchell by his nickname, "G–Wayne," and left the code number "250" which signified that he wanted to purchase one-quarter ounce of crack cocaine. Mitchell returned the call ten minutes later, asking Officer Conkey to meet him at Hardee's next to the Executive Inn on Chapman Highway. A second call was made by Officer Conkey to the pager approximately forty-five minutes later to further confirm the deal and advise Mitchell what vehicle Officer Conkey would be driving.

Almost immediately after this call, the officers in the undercover vehicle noticed a maroon van pull into the parking lot of the meeting location. Grogan was driving and Mitchell was seated on the passenger's side. The officers approached the van and Grogan was asked to exit the vehicle. As he exited, the officers observed Grogan drop a clear plastic baggie containing marijuana. A pat down search of Grogan revealed a small quantity of crack cocaine. Mitchell was then asked to step out of the van to enable the officers to perform a pat down search during which a one-quarter ounce bag of crack cocaine and a pager containing the telephone numbers from the Knoxville Police Department's undercover line were found.

Approximately two hours after his arrest, Mitchell gave a statement to the police admitting his possession of the crack cocaine and his intent to sell it to Officer Conkey.

From the "totality of the circumstances," the officers had reason to believe from their experiences "that criminal activity may be afoot and that persons with whom [they were] dealing may be armed and presently dangerous," thus enabling them to stop the vehicle in which defendant and Grogan were riding. *United States v.. Caicedo,* 85 F.3d 1184, 1189–90 (6th Cir.1996); *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The officers' observation of Grogan's tossing the bag of marijuana after he exited the van justified his pat down. A small quantity of cocaine was also found in his hat. When Mitchell exited the vehicle, he was observed holding a room key to the Executive Inn located next door to Hardee's. During Mitchell's pat down, Officer Bernhard Braeuner felt a sharp-edged object in Mitchell's pants that he recognized to be crack cocaine. This object was obtainable under *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)(holding that police may seize non-threatening contraband detected by touch during a legitimate *Terry* search).

The officers had probable cause to arrest Mitchell as they had within their knowledge "facts and circumstances . . . sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown that [defendant] has committed, is committing, or is about to commit an offense." *Painter v. Robertson,* 185 F.3d 557, 569 (6th Cir.1999)(quoting *Michigan v. DeFillipo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). These specific concrete facts and circumstances supported more than a mere suspicion of criminal activity. *See Strickland,* 144 F.3d at 415–16.

Mitchell argues that the facts known to Officer Conkey do not satisfy probable

cause as nothing indicates that the meeting was illegal, though he concedes that an individual's agreeing on the phone to meet a virtual stranger is odd. He also challenges the initial source of Officer Conkey's information regarding the alleged sale of drugs from Grogan's maroon van on the ground that his ex-girlfriend's information was not reliable.

*Illinois v. Gates,* 462 U.S. 213, 241, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), notes that "[Supreme Court] decisions applying the totality-of-the-circumstances analysis...have consistently recognized the value of corroboration of details of an informant's tip by independent police work." Evans's statements were corroborated by Officer Conkey when he called the pager number, recognized Mitchell's voice, and arranged the crack cocaine purchase.

AFFIRMED.