NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1073
_____

THOMAS SUCHOCKI,

Appellant

v.

SERGEANT CHRIS GILCHRIST;
PAULSBORO POLICE DEPARTMENT;
CITY OF PAULSBORO; LOGAN TOWNSHIP
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 11-cv-04626)
District Judge:  Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2015

Before:  HARDIMAN, SCIRICA and BARRY, *Circuit Judges*.

(Filed:  January 26, 2015)

_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

Thomas Suchocki appeals the District Court's summary judgment disposing of his

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

claims against police officer Chris Gilcrest, the city of Paulsboro, New Jersey, and the Paulsboro Police Department.

## I

We confine ourselves to Suchocki's account of the episode that precipitated this lawsuit, which Defendants vigorously dispute, because summary judgment is appropriate only when a reasonable jury could not find for the nonmovant even if it accepted his version of the facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On the afternoon of May 28, 2010, Suchocki stopped his truck at an intersection in Paulsboro where Gilcrest was working as a crossing guard. When the traffic light turned green, a car in front of Suchocki made a left, causing Gilcrest to become angry. Gilcrest then "turned his anger to" Suchocki, "screaming and hollering" at him. App. 40–41. Speaking through his window, Suchocki said, "I don't know what you want. . . . [W]hat do you want? What do you want?" and raised his hands in frustration. App. 41. Gilcrest ordered Suchocki to pull over, and he complied.

When Gilcrest approached the truck, Suchocki asked, "What did I do?" App. 42. "You wouldn't let me do my job," Gilcrest said. *Id.* "I don't think you know how to do your job," Suchocki retorted. *Id.* As Suchocki reached for his license and registration, he used his cell phone to call his attorney, but Gilcrest ordered him to turn the phone off and hand it over. Suchocki, who has a disability, opened the driver's side door slightly to make it easier to get his license, prompting Gilcrest to force it shut. Gilcrest then ordered Suchocki out of the truck. Suchocki remembers demanding to talk to a supervisor, though he does not know exactly when he did so.

2

After Suchocki got out of the truck, Gilcrest left briefly to help children cross the intersection. Upon his return, he started writing a ticket and told Suchocki "that he didn't like my attitude. He was trying to do his job, and he would lock me up." App. 46. "[I]f you are going to lock me the fuck up, lock me up," Suchocki replied. *Id.* Gilcrest then arrested him and called for another officer to bring him to the police station. Gilcrest later arrived at the station and questioned Suchocki without allowing him to see his lawyer. Suchocki was released and charged with two offenses: harassment, in violation of N.J. Stat. Ann. § 2C:33-4(c), and obstructing the administration of law, in violation of N.J. Stat. Ann. § 2C:29-1(a). The charges were ultimately dismissed.

This appeal concerns the viability of Suchocki's federal claims against Gilcrest, the city of Paulsboro, and the police department. Pursuant to 42 U.S.C. § 1983, Suchocki contends that Gilcrest violated his Fourth Amendment rights by arresting him without probable cause. He also seeks to impose municipal liability upon Paulsboro and its police department on the theory that the city caused Suchocki's constitutional injury by failing to adequately train or supervise Gilcrest. The District Court granted summary judgment to Defendants because it concluded that Gilcrest had probable cause to arrest Suchocki even under Suchocki's version of the facts, meaning there was no false arrest. *Suchocki v. Gilcrest*, 2013 WL 6858708, at *6 (D.N.J. Dec. 30, 2013).[1] We will affirm.

## II

Our review of a summary judgment is plenary. *Blunt v. Lower Merion Sch. Dist.*, 767

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a). We have jurisdiction under 28 U.S.C. § 1291.

F.3d 247, 265 (3d Cir. 2014). "We may affirm a district court for any reason supported by the record." *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011).

A

In granting summary judgment on the false arrest claim, the District Court held that undisputed facts indicate that Suchocki's arrest was prompted by his "cursing, argumentative behavior, and demand that [Gilcrest] 'lock [him] up,' all of which prevented [Gilcrest] from returning to his traffic posting" and established probable cause for arrest. *Suchocki*, 2013 WL 6858708, at *6. Suchocki's main claim is that his behavior was not egregious enough to create probable cause to arrest him for harassment under § 2C:33-4(c) or obstructing the administration of law under § 2C:29-1(a).

Even if it were true that a reasonable police officer would not have found probable cause to arrest under those specific statutory provisions, however, the District Court did not err by granting summary judgment. "[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with," so there was no false arrest unless probable cause was lacking to arrest Suchocki for *any* offense. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). And even under Suchocki's version of the facts, probable cause existed to arrest him under at least one subsection of the harassment statute, which generally criminalizes "private annoyances that are not entitled to constitutional protection." *State v. Hoffman*, 695 A.2d 236, 242 (N.J. 1997). For example, subsection (a) of the statute prohibits simply "communicat[ing] in a 'manner likely to cause annoyance or alarm'" with intent to harass. *Id.* (quoting § 2C:33-4(a)).

Suchocki admits that he spoke to Gilcrest in a needlessly confrontational, coarse

4

manner during their encounter. He repeatedly asked Gilcrest what he wanted, told Gilcrest that he did not know how to do his job, and told him, "[I]f you are going to lock me the fuck up, lock me up." Although it is possible that this behavior would have been insufficient to *convict* Suchocki of violating even § 2C:33-4(a), it was certainly enough to give Gilcrest probable cause to arrest him. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("We have made clear that the kinds and degree of proof . . . necessary for a conviction are not prerequisites to a valid arrest."). The District Court therefore did not err by granting Gilcrest summary judgment on Suchocki's false arrest claim.

B

It follows *a fortiori* that the District Court also correctly entered judgment for Paulsboro and its police department on the failure to train and supervise claims. A municipality cannot be liable for a constitutional transgression by its agent that never occurred. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

III

For the reasons stated, we will affirm the District Court's summary judgment for Defendants.