**UNITED STATES of America**

v.

**John D. LUNT, Defendant.**

**Crim. No. 89–164.**

United States District Court,
W.D. Pennsylvania.

Jan. 31, 1990.

Margaret Picking, Asst. U.S. Atty., for U.S.

James J. Nesser, Uniontown, Pa., for defendant.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

This pretrial motion to suppress evidence came before the Court for hearing on January 22, 1990. The parties were given until January 29, 1990, to file any supplemental memoranda in support of their respective positions. Having considered the record made at the hearing, our bench notes, and the submissions of the parties, we make the following findings:

### Facts

Defendant John D. Lunt is charged in a three count indictment with: (1) possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(C), arising out of the discovery of a quantity of cocaine in a tool box in the trunk of a car in which defendant had been traveling; (2) possession of a firearm during the drug traffick-ing offense set forth in count 1, 18 U.S.C. 924(c)(1), arising out of the discovery of a Smith and Wesson .38 cal. revolver in the same toolbox; and (3) possession of an unregistered sawed-off shotgun, 26 U.S.C. § 5861(d), arising out of the discovery of an Excel shotgun in the defendant's residence.

The charges against defendant resulted from two separate searches conducted pursuant to warrants issued by a Fayette County district justice to a Pennsylvania State Police Trooper, James E. Baranowski. On June 13, 1989, Trooper Steven T. Story, PSP, assigned to the Uniontown, Fayette County barracks, was ordered to the area of the Waltersburg Post Office, near the intersection of Route 51 and S.R. 4032, to investigate a report of a disturbance. Arriving, Story observed the defendant, John D. Lunt, sitting naked on the steps of the post office, loudly announcing that he was the strongest man in the world, and that he was God. Trooper Story, who had worked for the state police since 1987 and for municipal police departments in both patrol and narcotics assignments from 1982 to 1987, believed that Lunt was possibly a mental health patient, and approached Lunt slowly, informing Lunt that he was going to be handcuffed and placed in Story's vehicle.

After placing Lunt in the back of his patrol car, with the door open, Story spoke to two eyewitnesses, a Mr. Broadwater and a Mr. Tringes, who pointed out Lunt's blue jeans dangling from a nearby overhead line. Story closed the door on Lunt to keep him from leaving and sent Broadwater and Tringes to find a pole to help get Lunt's pants. After retrieving the pants from the line, Story searched the pockets for his own safety before helping Lunt put his pants back on, removing a bundle of currency and two sets of keys.

By this time, Troopers Baranowski and Winter had arrived as back up, and were briefed by Story. Story, acting on reports from the bystanders, interviewed a Mr. Leighty in the house across from Lunt's original location, and obtained a report that Lunt had struck Leighty and smashed the windshield on Leighty's car. Meanwhile,

Trooper Baranowski, to aid in identifying Lunt, had found Lunt's wallet and handed it to Story. Story took Lunt to the Uniontown Hospital emergency room, and handed his wallet and identification over to E.R. personnel.

Trooper James Baranowski, who had four years with the PSP and six years prior to that with Army CID, arrived as Story was putting Lunt's pants back on him. Baranowski spoke to Lunt, asking him his name and how he had gotten to the Waltersburg Post Office. Lunt, in what might be best described as a controlled scream, interspersed with the other statements already set forth, stated his name and indicated that he had arrived in a blue car. Baranowski observed that the car was a blue, 1988 Thunderbird parked in the westbound lane's berm facing east toward oncoming traffic. It was sticking at an angle about two feet into the roadway with the driver's door open.

Baranowski walked over to the vehicle to look for Lunt's wallet and identification, and looked in the car through the open door. In the broken, open console between the front seats, Baranowski saw what he recognized as a power sniffer used for inhaling cocaine, some whitish powdery residue, and two short straws of the kind used for inhaling cocaine. Confiscating these items, and believing Lunt to be possibly overdosing on cocaine or some other drug, Baranowski continued to look for some verification of Lunt's identification, as well as a medical information card. A search of the glove compartment for Lunt's wallet was unsuccessful, but Baranowski did find two razorblades which he also confiscated.

The wallet was not in the passenger compartment of the car, so Baranowski took the keys from the ignition and opened the trunk, where he found a suitcase, vegetable matter that appeared possibly to be marijuana, and a toolbox. Opening the suitcase, Baranowski found the wallet, and also observed a marijuana cigarette as well as additional loose vegetable matter. Baranowski took the wallet and gave it to Story, who then drove Lunt to the hospital.

Baranowski obtained a search warrant for the vehicle. Government Exhibit "1". Executing the warrant on the vehicle, Baranowski cut the lock from the toolbox in the trunk, and discovered the .38 cal. revolver and cocaine which are the basis for counts one and two, as well as several vehicle titles, live ammunition for the pistol, and letters addressed to Lunt's home address. Baranowski obtained a second search warrant for Lunt's residence based on the results of the vehicle search and the large amount of money found in Lunt's pants.[1] Government's Exhibit "2". The second search warrant was executed the following morning, and netted the sawed-off shotgun which constitutes the basis of count three.

Later in the evening of June 13, 1989, at about 9:00 p.m., Trooper Baranowski received a phone call from an unknown staff member at Uniontown Hospital informing him that Lunt was going to sign himself out of the hospital, that Lunt's doing so was contrary to their medical advice, and that Lunt wanted to talk with him. Baranowski and Winter went to the hospital, where they met Lunt in a private "bay", a group of beds surrounded by a curtain. Lunt was not under restraint, appeared to be rational once more, and was alone. No police personnel had stayed with Lunt, and at no time was he told that he was not free to go. Baranowski asked Lunt what had happened that day, and Lunt replied to the effect that he had been smoking marijuana given to him and that someone must have laced it with another drug, because he just "flipped out". Baranowski asked Lunt about the toolbox and cocaine, to which Lunt replied that he didn't know anything about the drugs, and that the toolbox wasn't his.

### Discussion

■ The defendant first challenges the evidence gained from the execution of the

---

1. The amount was not set forth in the affidavit of probable cause. Lunt had approximately $1000.00 in his blue jeans.

vehicle search warrant. Although the evidence produced at the suppression hearing shows that Lunt does not have standing to challenge the search of the toolbox, since he claimed neither ownership, possession, nor even knowledge of the toolbox,[2] which was in the trunk of his brother-in-law's vehicle, we address his objections to the vehicle search generally.

■ 11(a) "The items sought in the search warrant were not connected to the summary charges of criminal mischief and harassment." Trooper Story, after obtaining a statement from Mr. Leighty, prepared two non-traffic citations against Lunt for striking Leighty and breaking his car's windshield. It is irrelevant to the application for the search warrant that these charges are not related to the items sought in the search warrant.

■ 11(b) "There was no probable cause to believe drugs would be found in the vehicle interior, the trunk, or the tool box." To the contrary, not only was there ample probable cause solely from the plain view observations of Trooper Baranowski to search the interior of the vehicle and trunk, but more pertinently, there was more than ample probable cause set forth in the affidavit of probable cause for the magistrate to conclude that there was a reasonable likelihood that controlled substances would be found in the vehicle and in containers therein.

■ 11(c) "At the time of the search of the vehicle, defendant was not under arrest for possession of controlled substances." This also is irrelevant. Very little would commend a constitutional scheme whereby an arrest necessarily preceded a search for evidence to support that arrest.

■ 11(d) "Trooper Baranowski's intrusion into the vehicle was improper, and the search for identification was pretext." We credit the veracity of the testimony of both Trooper Story and Trooper Baranowski who both indicated that they were pri-

marily looking for some reliable identification for the naked Mr. Lunt for purposes of assisting his medical treatment. Further, Trooper Baranowski's looking into the open vehicle from the street was in no way a search. See *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Opinion of Rehnquist, J.).

■ 11(e) "The *capias* clause of the search warrant was too general." A *capias* clause which refers to the Pennsylvania Controlled Substances Act and contains reference to "items of narcotics" and "drug paraphernalia" is sufficiently specific to allow both the magistrate issuing the search warrant and the officer executing it to understand exactly what is to be seized.

11(f) This merely restates the objection in 11(c).

11(g) "The probable cause set forth in the affidavit was inconsistent with the observations by Trooper Baranowski of Lunt's behavior." There are two observations of behavior in the affidavit of probable cause. The first is the hearsay statement reported by the bystanders to Trooper Story and through him to Trooper Baranowski that the defendant had been stripped and running around in public. The second is Trooper Baranowski's observation that Lunt looked as if he had taken some type of drug.

■ We first point out that even if the challenged statements were removed, there is still sufficient remaining probable cause to support the issuance of the search warrant. Secondly, the conclusions Trooper Baranowski drew from his own contact with Lunt, hearing him screaming his name, his claims of superhuman strength and so forth, coupled with the other evidence known to Baranowski[3] made the conclusion that Lunt had taken some kind of drug a reasonable inference, even if not a clinical diagnosis that is medically reliable.

---

**2.** See *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *United States v. McBean,* 861 F.2d 1570 (11th Cir.1988).

**3.** For instance, although there was a great deal of alcohol in the vehicle, neither Story nor Baranowski described Lunt as intoxicated or even as smelling of alcoholic beverages.

■ 11(h) "A copy of the search warrant should have been served on Lunt or the owner of the vehicle." The Pennsylvania Rules of Criminal procedure would be satisfied by leaving a copy of the warrant in the vehicle, as Trooper Baranowski did. Pa.R.Crim.P. 2008(b). Even if the state's procedural rules were violated, however, it would have no bearing on the evidence presented in this Court, unless that violation were constitutional in its nature.

11(i) This merely restates the objections in 11(e) and 11(h).

Secondly, Lunt challenges the search of his residence at R.D. 1, Box 31, Fayette City, Pennsylvania, 15438, with objections parallel to those challenging the vehicle search.

14(a) "The items sought in the search warrant of the residence were not related to the harassment or criminal mischief charges." See above.

■ 14(b) "The probable cause for search of the house was insufficient." The amount of cocaine seized, as well as the large amount of money found on Lunt made an inference likely that Lunt did not merely possess cocaine, but was in the course of distributing it. The logical deduction from the presence of cocaine and paraphernalia in the car that the items came from a large cache at Lunt's residence was a permissible one. And see *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965) (preference for warrants should resolve marginal cases).

14(c) "When the search warrant was issued Lunt had not yet been arrested for possession of controlled substances." See above.

14(d) This restates the objection in 11(e) to the first warrant.

14(e) See 14(c).

14(f) See 11(g).

14(g) See 11(i).

Trooper Baranowski, after the vehicle had been searched, had Corporal Maharowsi of the PSP and his canine partner "Decoy" dispatched to the PSP parking lot where the Thunderbird had been towed. The dog alerted on the trunk of the car and on the money taken from Lunt's pants, indicating the presence of some kind of controlled substance. Lunt challenges the removal of the money from his pants by Trooper Story as well as the dog's "search" of the money by sniffing.

■ We begin by observing that if the seizure of the money was lawful, so was any field test, canine sniff, or other scientific examination of the money. It is likewise clear that if Trooper Story had arrested Lunt, for instance on the summary offenses, he would have been justified in searching Lunt's pockets. See, e.g. *Michigan v. DeFillippo*, 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979). We believe that the same prudent concern for the officer's safety must apply in situations where an officer takes a person into protective custody, as we find Trooper Story did here. See *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969).

■ Defendant also moves to suppress his statements made to Trooper Baranowski at the Uniontown Hospital, on the grounds that he was not given his *Miranda* warnings. We deny this motion because the *Miranda* requirement applies only to custodial interrogation, and Lunt was not in custody. *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Contrary to the averments of defendant's motion, he was not under arrest for even the summary charges, was not in the custody of the state police, was not restrained in any way, was free to leave, and was in fact leaving the hospital. In fact, Lunt initiated the contact with the trooper, further indicating that Lunt did not believe himself to be in custody even though the allegedly incriminatory statement was in response to Trooper Baranowski's questions.

■ Additionally, Lunt argues that his mental state was so affected by drug use that any statement he made was involuntary. The evidence presented at the suppression hearing convinces us to the con-

trary that Lunt was not being influenced by drug use at the time of Trooper Baranowski's question. He was calm, rational, and responsive to questions, and was quite capable, from his plans to leave the hospital, of exercising his free will. No reasonable evaluation of the evidence produced at the suppression hearing would lead to the conclusion that Lunt was either deprived of his freedom of action in any significant way or believed that he was. The motion to suppress defendant's statement is likewise denied.