The STATE of Ohio, Appellee,

v.

BLOCK, Appellant.

[Cite as *State v. Block* (1990), 67 Ohio App.3d 497.]

Court of Appeals of Ohio,
Clermont County.

No. CA89-07-062.

Decided April 30, 1990.

*Donald W. White*, Prosecuting Attorney, and *Timothy E. Schneider*, for appellee.

*R. Daniel Hannon*, County Public Defender, and *W. Stephen Haynes*, for appellant.

*Per Curiam.*

Defendant-appellant, Tracy L. Block, appeals from a conviction for drug abuse in violation of R.C. 2925.11. Appellant had originally pleaded not guilty to the charge, but changed her plea to no contest after the Clermont County Court of Common Pleas denied her motion to suppress evidence which had resulted in her arrest. On June 19, 1989, the trial court entered a finding of

guilty and sentenced appellant to one year of imprisonment, which was suspended, and to three years of probation.

Evidence adduced at the March 1989 suppression hearing indicated that at about 1:30 a.m. on October 15, 1988, appellant exited the Visions Nightclub in Milford in the company of two men. Miami Township police had apparently received an anonymous informant's tip two weeks before that one of the men, Timothy Bray, was selling drugs in the nightclub parking lot, and that Bray and "a red-haired or blondish woman" would be there that night with cocaine in their possession. Officer John Stephens and Corporal Mark McDermott were conducting a surveillance of the parking lot, and, when they saw Bray, followed him to his car. The officers then questioned Bray and the other man regarding the alleged drug sales. When a pat down search of the men produced nothing, the officers searched Bray's car and found a small mirror and a piece of green-tinted glass, both of which had a powdery white residue on them.

At this moment, appellant, who apparently had arranged with Bray for a ride to her car, stated that she wanted to go home and would walk to her car. Officer Stephens stopped her, taking her purse and emptying its contents onto the hood of the car. The search revealed a small packet of white powder which the officers believed was cocaine.

Appellant was arrested and taken to the police station where she was charged with drug abuse.

This appeal followed and appellant assigns the following as error:

"Assignment of error No. 1:

"The trial court erred in overruling appellant's motion to suppress the search of her purse.

"Assignment of error No. 2:

"The decision of the trial court was against the manifest weight of the evidence."

In her first assignment of error, appellant argues that the trial court should have granted her motion to suppress since the cocaine found in her purse was the fruit of an illegal search. Appellant contends that the police officers lacked probable cause to believe she was committing a crime. Furthermore, she argues that the search of her purse violated her rights under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. Nevertheless, the state maintains that the officers possessed probable cause to seize appellant's purse and search its contents because the officers were acting on the tip of a reliable informant.

■ "The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, *and effects,* against unreasonable searches and seizures.'" (Emphasis *sic.*) *United States v. Place* (1983), 462 U.S. 696, 700, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110, 116. Generally, personal property may not be seized absent a judicial warrant. However, a warrant is not required in order to seize personal property where a law enforcement official is able to point to specific, articulable facts which would lead him to reasonably suspect the personal property contains contraband. *Id.,* 462 U.S. at 702, 103 S.Ct. at 2642, 77 L.Ed.2d at 117.

■ Although law enforcement officers need only possess reasonable suspicion to *seize* the personal property of an individual suspected of illegal activity, officers nevertheless must have a judicial warrant issued upon probable cause in order to *search* such property, except in certain well-defined circumstances. *Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464; *Skinner v. Railway Labor Executives' Assn.* (1989), 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639, 661; *Mincey v. Arizona* (1978), 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298.

■ One such exception to the search warrant requirement is where an officer is permitted to conduct a limited search of the suspect and areas immediately within that person's control for the officer's protection and to prevent evidence from being destroyed. *Chimel v. California* (1969), 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694. While the search need not follow the arrest, police must have probable cause to arrest prior to conducting the search. See *Cupp v. Murphy* (1973), 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900, 905. "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Sibron v. New York* (1968), 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 934–935; but, see, *Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645. Finally, even where probable cause is present, once the item sought to be searched is removed from the suspect's control, the officer's privilege to search expires and a judicial warrant must be obtained before the search can occur. *Chimel, supra,* 395 U.S. at 763–764, 89 S.Ct. at 2040–2041, 23 L.Ed.2d at 694–695.

■ With these considerations in mind, the focus of our analysis in the case at bar is whether the officers had a reasonable, articulable suspicion which would justify the seizure of appellant's purse and whether, once they had done so, they were privileged to search its contents absent a judicial warrant.

Because we find that the officers lacked probable cause to arrest appellant prior to locating the cocaine in her purse, we hold that this was not a valid

search incident to an arrest and that the cocaine revealed by the search should have been suppressed by the trial court.

The state argues that the officers did possess probable cause since they were acting on the verified tip of an informant. Probable cause to arrest may indeed be based upon an informant's tip. *Draper v. United States* (1959), 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332; *Beck v. Ohio* (1964), 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 147; *Illinois v. Gates* (1983), 462 U.S. 213, 246, 103 S.Ct. 2317, 2336, 76 L.Ed.2d 527, 553.

Evidence presented at the suppression hearing reveals that, of the two officers at the scene, only Officer Stephens was aware that an informant's tip had provided them the basis for conducting the surveillance of Bray and his companions. According to Officer Stephens, the informant had contacted him for the first time only two weeks before. Stephens gave two separate accounts of the information that the caller had provided. His original testimony was that "[w]e had information from a confidential informant that [a red-haired female] and another male had cocaine on their person at Visions Disco." However, Stephens' later testimony indicated that the red-haired female companion of Bray was not necessarily carrying cocaine:

"[Prosecutor.] And at that time were you informed that the redheaded woman that was with him would be carrying cocaine?

"[Officer Stephens.] No, just that they would be accompanied by them and that that person was a user or carrying, one or the other.

"Q. Did this informant indicate specifically whether this defendant would be carrying cocaine, or just simply that she was a user of cocaine?

"A. That there was a possibility that she would be carrying but she was mostly a user.

"Q. Did the informant indicate to you where that cocaine would be that Mr. Bray had?

"A. It was either in the vehicle or on his person."

Asked to describe the steps taken to verify the informant's tip, Stephens testified as follows:

"First phone call I got was in reference to Timothy Bray from this confidential informant and gave the address of Timothy Bray where he was living and the car he was driving, his activities at Visions and that there was a redhead female and that he was trafficking in cocaine at Visions. For those two to three weeks we did surveillance [*sic*] of the vehicle that was described by the informant to verify that it was the correct vehicle and that it was reliable information that he was there almost every night. His address where he was living was in Milford, Ohio, that that was correct and that he was

accompanied by a female and that was the information. And we verified all that information prior to the stop."

None of the information checked by Officer Stephens was in relation to the "red-haired female" accompanying Bray.

Based upon this testimony, the trial court found that "[t]he information that was received from informant was checked out and verified although the specifics of the verification are unknown." We do not agree that this information was sufficiently verified to provide probable cause to arrest appellant, thus justifying the search of her purse.

Any red-haired female in the vicinity of Bray would have been subject to a search that night. We believe that the information given Officer Stephens regarding the red-haired woman should have been verified in order to give the officers particularized suspicion of illegal activity which was focused upon appellant herself. *United States v. Cortez* (1981), 449 U.S. 411, 417–418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 628–629.

Moreover, Officer Stephens admitted at the suppression hearing that if the officers had not found cocaine in appellant's purse, no arrest would have occurred:

"[Appellant's counsel.] Now, isn't it true that before you arrested Timothy Bray that, or before you searched Tracy Block's purse and found that cocaine, that you hadn't found anything else and all three of them would have been free to leave, is that right?

"[Officer Stephens.] Yes.

"Q. You didn't arrest Mr. Bray for the mirror you found in his car?

"A. No, I arrested him for the substance that was on the mirror.

"Q. But, if you hadn't found that cocaine in her purse you wouldn't have arrested him for that, would you?

"A. That's correct."

We believe neither the informant's tip nor the glass found in Bray's car gave officers probable cause to arrest appellant. Without probable cause to arrest, the officers lacked the authority to make a search of appellant's purse incident to arrest. Even if the officers had possessed probable cause, their admitted sole purpose for the search was to see if appellant was carrying contraband in her purse. This circumstance would only have permitted them to remove the purse from her control and then to secure a search warrant. We therefore conclude that the trial court erred in overruling appellant's motion to suppress. Appellant's first assignment of error is sustained.

For her second assignment of error, appellant argues that the trial court's decision was against the manifest weight of the evidence because inconsistencies in Officer Stephens' testimony under cut the credibility of his story and substantially weakened the trial court's conclusions. Although this assignment of error has merit, it is not for the reasons given by appellant. If we exclude the evidence which should have been suppressed as determined in response to appellant's first assignment of error, the remaining evidence was insufficient to support a conviction of appellant. Therefore, appellant's second assignment of error is sustained.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and appellant is discharged.

*Judgment reversed.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.