OPINION.
Kevin Johnson was an informant who worked with the Regional Narcotics Unit (RENU) to arrange a drug transaction with a seller named Antonio Campbell. Kevin made various telephone calls to Campbell to arrange the transaction. (Kevin and the appellant in this case, Lamont Johnson, are not related. For clarity, we use Kevin's first name in this opinion.) When the transaction had been set, Kevin drove toward the agreed meeting spot, a McDonald's parking lot. Chris Connors, a RENU officer, accompanied Kevin, and other RENU officers set up surveillance in the area where the transaction was to take place.
As Kevin was driving to the McDonald's, he saw Campbell driving in a sport utility vehicle with a passenger. Kevin told Connors that he recognized Campbell as the driver. Kevin also told Connors that the vehicle belonged to "Little," a nickname that Connors recognized belonged to Lamont Johnson, a suspected supplier for Campbell. But Kevin did not identify the passenger.
After Campbell drove by the McDonald's parking lot a few times, he dropped off the passenger in front of an AutoZone shop, which was a few blocks from the McDonald's. The passenger entered the AutoZone and purchased some items. Shortly after the passenger left the AutoZone, RENU officers arrested him. When the officers searched the passenger, they found crack cocaine inside a pocket of a coat that the passenger was carrying. The officers identified the passenger as Lamont Johnson.
Johnson was charged with trafficking in cocaine and possession of cocaine, with a major-drug-offender specification. (Campbell was also charged with trafficking and possession, but this appeal does not involve him.) Johnson filed a motion to suppress the evidence obtained after his arrest. This evidence included the cocaine and various statements that he made to the police. After a hearing, the trial court denied the motion. A jury trial was held, and Johnson was found guilty of both charges, plus the specification. Johnson now appeals his convictions. He raises eight assignments of error, but we only address the first and second assignments, because we conclude that they are dispositive of this appeal.
In the first and second assignments, Johnson argues that the court erred in denying his motion to suppress. He claims that the RENU officers (who did not have an arrest or a search warrant) unlawfully arrested him and that the resulting search was improper. He also claims that the court should have suppressed the statements that he gave to the police after his arrest.
Warrantless searches are "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions."[1] The state argues that this case involves a valid search incident to a lawful arrest. Under the search-incident-to-arrest exception, police may conduct a warrantless search incident to a lawful arrest. But if the arrest is unlawful, such as when the police do not have probable cause to make it, then the search is unlawful also.
In certain cases involving informants, the information given by the informants to the police helps to give the police probable cause to arrest and search suspects for drugs.[2]
This court has explained that "police have probable cause to conduct a search for contraband when detailed information provided to them by a confidential but reliable informant is subsequently corroborated, in some significant combination, with respect to the name or physical description of a suspect, the location of the illegal sale, the time of the sale, the description of the automobile driven by the suspect or the car's license plate numbers."[3] Here, the state argues that probable cause was established by the fact that an informant arranged a drug transaction with Campbell and that Campbell showed up for the deal in Johnson's vehicle, with Johnson as a passenger. The state further points out that Officer Connors, the only person to testify at the suppression hearing, stated that RENU had suspected that Johnson was Campbell's drug supplier in past incidents. While the evidence establishes that RENU had some information that Johnson might have committed a crime, the points raised by the state did not show nearly enough of a connection to establish that RENU had probable cause (or even reasonable suspicion) to make an arrest or to search Johnson.[4]
We conclude that the following factors support our holding that probable cause did not exist. First, when the informant and Campbell arranged the drug transaction over the phone, Campbell never suggested that he would get the drugs from Johnson. In fact, Johnson's name was never mentioned during the conversations. Also, the record reveals that Connors only had a vague suspicion, at best, that Johnson was Campbell's supplier.
Further, although Connors recognized that Campbell arrived for the transaction in Johnson's vehicle, he did not recognize that Johnson was the passenger in the vehicle. At the suppression hearing, Connors conceded that Johnson was not even identified until after he was arrested. Finally, before Johnson was arrested, no drug transaction had taken place, no RENU officers had seen any drugs, and Johnson had engaged in no other criminal conduct — he had merely gotten out of the vehicle and had gone into the AutoZone to purchase some merchandise.
Under these circumstances, we hold that the police unlawfully arrested Johnson and, thus, that the court should have suppressed any "fruits" of the arrest.[5] These fruits included the cocaine found in the coat that Johnson was holding. They also included the statements made by Johnson to the police after his arrest. Based on our holding, we conclude that Johnson's remaining assignments, which involve his trial and sentencing, are moot. The trial court's judgment, accordingly, is reversed and this cause is remanded for further proceedings in accordance with law.
 ___________________________________________________________ Judgment reversed and cause remanded.
 DOAN, P.J., and GORMAN, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] See State v. Kessler (1978), 53 Ohio St.2d 204, 207,373 N.E.2d 1252, 1255 (quoting Coolidge v. New Hampshire [1971],403 U.S. 443, 454-455, 91 S.Ct. 2022, 2032).
[2] See, e.g., State v. Walker (July 28, 1998), Franklin App. No. 97APA09-1219, unreported; State v. Colbert
(Mar. 7, 1990), Hamilton App. No. C-880471, unreported.
[3] Colbert, supra.
[4] See Michigan v. DeFillippo (1979), 443 U.S. 31, 37,99 S.Ct. 2627, 2631 (Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.").
[5] State v. Donohue (June 17, 1987), Hamilton App. No. C-860458, unreported ("Mere proximity to the scene of suspected criminal activity cannot alone give rise to probable cause for an arrest."); see, also, State v. Blewett (Sept. 1, 1994), Cuyahoga App. No. 66212, unreported (no probable cause to arrest based on fact that the police did not see an exchange of drugs or money);State v. Block (1990), 67 Ohio App.3d 497, 587 N.E.2d 858 (no probable cause based on police's failure to corroborate informant's information).