*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0452p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

LONNIE RAY DAVIS,

                *Defendant-Appellant.*

No. 07-1964

> Appeal from the United States District Court
> for the Eastern District of Michigan at Detroit.
> No. 06-20111—Gerald E. Rosen, District Judge.
>
> Argued: October 29, 2008
>
> Decided and Filed: December 19, 2008
>
> Before: MARTIN and GILMAN, Circuit Judges; DOWD, District Judge.[*]

—————————

## COUNSEL

**ARGUED:** Richard M. Helfrick, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Jeanine M. Jones, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Richard M. Helfrick, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Jeanine M. Jones, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

[*] The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge.   Lonnie Ray Davis challenges his convictions for being a felon in possession of a firearm and possession of cocaine base with intent to distribute. He argues that the evidence used to convict him was obtained through a search conducted without probable cause.  We hold that the vehicular safety statute Westland police relied upon to make the stop is unconstitutionally vague, but AFFIRM on the ground that the Exclusionary Rule does not apply.

I.

Early on January 13, 2006, Lonnie Ray Davis was driving south on Middlebelt Road outside of Detroit, Michigan.  At approximately 2:10 am, Westland police officer Pat Griffin encountered Davis while on patrol.  Davis had a four-inch tall "Tweety Bird" air-freshener doll hanging from his rearview mirror, and Officer Griffin stopped Davis on suspicion of violating MICH. COMP. LAWS § 257.709(1)(c),[1] which prohibits driving a motor vehicle with "a dangling ornament or other suspended object that obstructs the vision of the driver of the vehicle."

When Officer Griffin asked for Davis's license, Davis admitted that he did not have one.  Officer Griffin then placed Davis under arrest.  During a search incident to arrest, Officer Griffin found a stun gun, $655 in cash, an open pint of Hennessy cognac, and two baggies containing 23.9 grams of cocaine base.  Officer Griffin also recovered a loaded Grendel .380 caliber pistol after Davis told him that there was a gun in the car.

Davis was charged with being a felon in possession of a firearm and possession of cocaine base with intent to distribute.  He  moved to suppress the evidence obtained during the traffic stop on the grounds that the stop was made without probable cause, but

—————————————

[1] Officer Griffin did not testify in district court regarding the circumstances of the stop, so there is no evidence as to what he saw or why he believed Davis was in violation of Mich. Comp. Laws § 257.709(1)(c).

the district court denied his motion.  Davis then pled guilty to both offenses and was sentenced to 188 months in prison.  He now appeals  the district court's denial of his motion to suppress.

II.

The sole justification for the stop was the officer's belief that the four-inch Tweety Bird doll hanging from Davis's rearview mirror violated MICH. COMP. LAWS § 257.709(1)(c).  The difficulty of this case lies in the ambiguity of this provision.[2]  This law does not ban all dangling objects; rather, it bans only ornaments that "obstruct the vision of the driver of the vehicle."  Yet the statute does not specify to what degree the driver's vision must be obstructed or for how long.  This leaves an undefined category of dangling ornaments that arguably violate the statute–one that could be very large depending upon how individual law enforcement officials interpret it–because the statute itself provides no additional guidance to govern enforcement.  This is problematic for two reasons.  First, the breadth of discretion it delegates to law enforcement: legislatures have a constitutional duty to set out "minimum guidelines to govern law enforcement," *Kolender v. Lawson*, 461 U.S. 352, 358 (1983), but here no such neutral, objective standards are set forth.  Second, the discretion delegated to law enforcement by this statute has a potentially far-reaching application in practice.  Objects hung from rearview mirrors are legal in Michigan and are indeed quite common.  Many vehicles on the road today have *something* hanging from the rearview mirror, whether it be an air freshener, a parking pass, fuzzy dice, or a rosary.  And many organizations, both public and private, either encourage or require their use.[3]  Because of this, many vehicles on the road *may* violate the obstruction law, but the statute itself provides no guidance either to motorists or police as to which ones do.  It is simply up to the officer on the street to decide.  We believe that the Constitution requires more of Michigan's legislature.

---

[2] We note at the outset that this ambiguity has not been cured by a narrowing construction by the state's highest court.  *Cf. Boos v. Barry*, 485 U.S. 312, 329-330 (1988).

[3] The statute does specifically exempt a few items from the statute's scope, but these exemptions do not limit the broad sweep of the statute's language.

In *Kolender v. Lawson*, the Supreme Court struck down as void for vagueness a San Diego ordinance that required individuals on the street to provide "credible and reliable" identification when requested by an investigating police officer because the ordinance failed to provide "minimal guidelines to govern law enforcement." *Id.* at 358. In doing so, the Court explained the concerns animating the vagueness doctrine at length: "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 357. The Court continued:

> Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine–the requirement that a legislature establish minimal guidelines to govern law enforcement." Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

*Id.* at 357-58 (citations omitted). Likewise, in *City of Chicago v. Morales*, 527 U.S. 41 (1999), the Court struck down a Chicago ordinance that prohibited "criminal street gang members" from "loitering" with others in a public place, on the grounds that it gave "absolute discretion to police officers to determine what activities constitute[d] loitering." *Id.* at 61. This ordinance, the Court explained, was "impermissibly vague" even though it "d[id] not reach a substantial amount of constitutionally protected conduct" because it "fail[ed] to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *Id.* at 52.

As the Supreme Court observed in *Kolender* and *Morales*, the failure to provide objective standards to govern enforcement of a law is effectively a delegation of lawmaking power to the individuals that enforce it. Put a different way, a vague statute "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat." *Morales*, 527 U.S. at 60; *Kolender*, 461 U.S. at 359. Such a delegation is dangerous because it lends itself to the sort of arbitrary, pretextual, and discriminatory enforcement that is inimical to individual liberty and the rule of law:

> The rule of law signifies the constraint of arbitrariness in the exercise of government power. In the context of the penal law, it means that the agencies of official coercion should, to the extent feasible, be guided by rules–that is, by openly acknowledged, relatively stable, and generally applicable statements of proscribed conduct. The evils to be retarded are caprice and whim, the misuse of government power for private ends, and the unacknowledged reliance on illegitimate criteria of selection. The values to be advanced are regularity and evenhandedness in the administration of justice and accountability in the use of government power.

John C. Jeffries, Jr., *Legality, Vagueness, and the Construction of Penal Statutes*, 71 VA. L. REV. 189, 212 (1985). This concern for excessive delegation is distinct from the related doctrines of insufficient notice and overbreadth. *See Morales*, 527 U.S. at 55-56. Unlike the similar doctrines of insufficient notice and overbreadth, the "arbitrary enforcement" branch of vagueness doctrine is not primarily concerned with the effect of a law on the conduct of regulated parties. Rather, it is focused on the conduct of *regulators*–specifically, unguided discretion within the process of lawmaking and law enforcement. *Cf. Morales*, 527 U.S. at 52 (holding the Chicago ordinance to be "impermissibly vague" even though it "d[id] not reach a substantial amount of constitutionally protected conduct").[4]

We believe the concerns animating the Supreme Court's decisions in *Kolender* and *Morales* apply equally to the case at hand. *Morales* identified three factors that made the Chicago ordinance particularly suspect. First, the ordinance contained no criteria or clear standards to guide enforcement. Second, it covered a substantial amount of innocent conduct unrelated to the purposes of the statute. Third, because of the statute's breadth, it invited subjective judgments by officers and did nothing to

---

[4] Because of this, the ordinance raises no question under our doctrine on facial challenges. *See Morales,* 527 U.S. at 71 (Breyer, J., concurring) ("[T]he ordinance violates the Constitution because it delegates too much discretion to a police officer to decide whom to order to move on, and in what circumstances. And I see no way to distinguish in the ordinance's terms between one application of that discretion and another. The ordinance is unconstitutional, not because a policeman applied this discretion wisely or poorly in a particular case, but rather because the policeman enjoys too much discretion *in every case*. And if every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid *in all its applications*.") (emphasis added); *see also*, 527 U.S. at 55 (plurality) ("When vagueness permeates the text of such a law, it is subject to facial attack."); *cf. Coates v. Cincinnati*, 402 U.S. 611, 611 (1971) (striking down an ordinance that prohibited persons assembled on a sidewalk "conduct[ing] themselves in a manner annoying to persons passing by" as facially unconstitutional).

discourage arbitrary and biased judgments in the field. *See* 527 U.S. at 60-64. Here, as noted above, the Michigan statute provides almost no standard for determining whether a given ornament obstructs the vision of the driver; it thus "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat." *Kolender*, 461 U.S. at 359 (citations omitted). Further, the application of the statute is broad: a simple look around when driving confirms that many vehicles on the road have something hanging from their rearview mirror or suspended from their windshield, and few of these "obstruct" the driver's vision in any material way–certainly not enough to impair their ability to operate their vehicles.[5] The sense in which such dangling ornaments "obstruct" drivers' vision is not related to the safety purpose of the statute.

In sum, then, the lack of minimal law enforcement standards provided by the statute, combined with the prevalence of dangling ornaments in vehicles–which is not discouraged by the State of Michigan–gives law enforcement officers authority to engage in a "standardless sweep" of most of the vehicles on the road. This is precisely the infirmity the Supreme Court identified in the statutes struck down in *Kolender* and *Morales*. And, as those cases make clear, it is not an answer to say that one can avoid potential liability by refraining from using a dangling ornament: liability in *Kolender* could have been avoided by refraining from "loiter[ing] or wander[ing] upon the streets . . . without apparent reason"; likewise, liability in *Morales* could have been avoided by refraining from "loitering." As the *Morales* Court explained, this objection misses the point:

> That the ordinance does not apply to people who are moving–that is, to activity that would not constitute loitering under any possible definition of the term–does not even address the question of how much discretion the police enjoy in deciding which stationary persons to disperse under the ordinance.

*Id.* at 61-62. Again, the problem in *Kolender* and *Morales* was the *degree of discretion* delegated to law enforcement officials–that is, the lack of objective standards supplied

---

[5] This presumably explains why the state of Michigan has not outlawed *all* ornaments, and why so many vehicles drive safely and freely with ornaments hanging in open view.

by the legislature to govern enforcement. Broad applicability simply compounds that concern. Because the statute at issue here suffers the same infirmity as those at issue in *Kolender* and *Morales*, it should suffer the same fate.

Finally, we note that the rule of law concerns underlying the vagueness doctrine are even stronger in the Fourth Amendment context after the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806 (1996), which did away with pretext analysis under the Fourth Amendment. If courts cannot review the motives of law enforcement officers after the fact, it is crucial that they review the breadth of discretionary authority police receive from legislatures at the outset. The alternative is a broad abdication of the judicial duty to enforce the Fourth Amendment's prohibition on unreasonable searches and seizures at a time when this duty is more important than ever. *See, e.g.*, *Atwater v. City of Lago Vista,* 532 U.S. 318, (2001) (upholding a custodial arrest, and thus the right to search incident to arrest, for a traffic infraction); Wayne La Fave, *The "Routine Traffic Stop" from Start to Finish: Too Much "Routine," Not Enough Fourth Amendment*, 102 MICH. L. REV. 1843 (2004).

Fortunately for the state of Michigan, this is not a case where further precision is either impossible or impractical. *Kolender*, 461 U.S. at 361; *United States v. Petrillo*, 332 U.S. 1, 7-8 (1947). Michigan could ban all dangling ornaments (with or without enumerated exceptions), explain in detail what kind of obstruction the statute does not allow, or provide other objective criteria to constrain the discretionary authority of those charged with enforcing the law. Because the current statute lacks these qualities, we hold that it is unconstitutionally vague.

III.

While we have held the Michigan statute unconstitutional, that does not end the matter of whether Davis's motion to suppress was improperly denied. The usual remedy when evidence is obtained through an unconstitutional search is exclusion; however, the good faith exception to the Exclusionary Rule applies to searches conducted in good faith reliance on a presumptively valid statute. *Illinois v. Krull*, 480 U.S. 340 (1987); *Michigan v. De Fillippo*, 443 U.S. 31 (1979). In *Michigan v. DeFillippo*, the Supreme Court held that the Exclusionary Rule did not apply to a seizure performed pursuant to a Detroit statute that was later declared to be void for vagueness. In doing so, it explained that the Exclusionary Rule was a remedy designed to deter unlawful police conduct, and that exclusion of evidence obtained through a good faith search based upon a presumptively valid statute would have no deterrent effect. 443 U.S. at 38 n.3.

This logic applies equally here. *United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1116 (10th Cir. 2007) (holding that *DeFillippo* "compel[s]" admission of evidence even though the statute at issue was arguably vague). As explained above, MICH. COMP. LAWS § 257.709(1)(c) is unconstitutionally vague. But, as the Supreme Court explained in *DeFillippo*, absent unusual circumstances, Westland police are not expected to know this. Indeed, police are under a duty to enforce all laws that are not obviously unconstitutional. 443 U.S. at 38. The statute at issue here is not so obviously vague that officers could reasonably be charged with knowledge of its unconstitutionality. And, given the breadth of the language of this enactment, it is difficult to say their reliance upon it was not "objectively reasonable."*Krull*, 480 U.S. at 349-50; *cf. Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").[6]

---

[6] This breadth also forecloses Davis's claim that there was no probable cause. Factually similar cases support this result. *See United States v. Delfin-Colina*, 464 F.3d 392 (3d Cir. 2006) (necklace hanging down almost to the dashboard); *United States v. Ramos-Caraballo*, 375 F.3d 797, 799 (8th Cir. 2004) (7-3/4 inch air freshener); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (air freshener).

Thus, the evidence was properly admitted against Davis.  Going forward, however, reliance on MICH. COMP. LAWS § 257.709(1)(c) to justify similar stops will not suffice.  Michigan has a constitutional duty to regulate dangling ornaments in a way that more clearly conveys the vehicular safety purpose of the statute and provides better guidance to the law enforcement officials that enforce it.  Otherwise, we risk authorizing "a standardless sweep [that] allows policemen, prosecutors, and juries  to pursue their personal predilections" in enforcing this law.  *Kolender*, 461 U.S. at 358.

## IV.

We hold that the vehicular safety statute Westland police relied upon to make the stop is unconstitutionally vague, but AFFIRM on the grounds that the Exclusionary Rule does not apply.