FILED IN
COURT OF CRIMINAL APPEALS

Janaury 22, 2015

ABEL ACOSTA, CLERK

PD-0601-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/21/2015 3:47:03 PM
Accepted 1/22/2015 2:00:09 PM
ABEL ACOSTA
CLERK

Nos. PD-0601-14 & PD-0622-14

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

CLAYTON DEAN REEDER AND                                  Appellants
MARCUS BRUCE HOLIDY,

v.

THE STATE OF TEXAS,                                          Appellee

Appeals from Rusk County

\* \* \* \* \*

**STATE'S POST-SUBMISSION
SUPPLEMENTAL BRIEFS**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney
Bar I.D. No. 24031632

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512-463-1660 (Telephone)
512-463-5724 (Fax)

The State submits these post-submission supplemental briefs to further address some issues raised during oral argument.

**Applicability of *Heien v. North Carolina***

In *Heien*, the Court addressed the validity of a traffic stop based on an officer's mistaken belief about the elements of an ambiguous brake-light traffic offense. __ U.S. __, 2014 U.S. LEXIS 8306, at *5 (2014). Even though the officer was wrong about the elements of the offense, his belief that a violation had been committed was reasonable, and so the stop based on that belief was also reasonable, *i.e.* supported by reasonable suspicion. *Id*. at *21. Because the Fourth Amendment forbids only those searches and seizures that are unreasonable, there was no constitutional violation. *Id*. at *18. The entire rationale of *Heien* is that a Fourth Amendment violation does not occur if the seizure is supported by probable cause or reasonable suspicion of a substantive criminal law violation. It does not say that any reasonable mistake makes any search or seizure reasonable. In fact, it said that an officer cannot be reasonably mistaken about the requirements of the Fourth Amendment: "An officer's mistaken view that the conduct at issue [(a search or seizure)] did not give rise to such a violation—no matter how reasonable—could not change that ultimate conclusion." *Id*. at *17.

The distinction between reliance on a substantive criminal law and reliance on

a statute purporting to authorize a search is not new. In *Michigan v. DeFillippo*, the Court stated: "We have held that the exclusionary rule required suppression of evidence obtained in searches carried out pursuant to statutes, not previously declared unconstitutional, which purported to authorize the searches in question without probable cause or a warrant." 443 U.S. 31, 35-51 (1979). In those circumstances, the search-authorizing statutes did not comport with the Fourth Amendment. *Id*. In contrast, the Court observed that substantive criminal law offenses do not directly authorize a search and seizure; they are relevant only to the facts and circumstances that constitute probable cause or reasonable suspicion supporting an arrest. *Id*. Or, as the Court explained,

> The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.

*Id*. at 36.

The Court went on to hold that the search of DeFillippo made pursuant to his arrest based on probable cause that he violated a statute (failure to identify), which was later declared unconstitutional for vagueness, did not violate the Fourth Amendment. *Id*.

The Supreme Court has also addressed the distinction between finding no violation occurred and choosing not to apply the exclusionary remedy. In *Illinois v. Krull*, also cited by *Heien*, 2014 U.S. LEXIS 8306, at \*17, a statute that authorized warrantless inspections of automobile wrecking yards was held unconstitutional because it gave officers unbridled discretion. *Illinois v. Krull*, 480 U.S. 340, 1164 (1987). Recognizing that the search of Krull's business under the statute violated the Fourth Amendment, the Court held that, because law enforcement relied on the presumptively valid statute in good faith, the federal exclusionary rule did not require the remedy of suppression. *Id*. at 1169-72. In doing so, the Court observed that the deterrent purpose of the exclusionary rule is not served because a statute, enacted by legislators, provided the basis for the mistake; there was no improper police conduct. *Id*. at 352. In the Court's view, "the greatest deterrent to the enactment of unconstitutional statutes is the power of courts to invalidate such statutes." *Id*.

Transportation Code Section 724.012(b) is a search-authorizing statute. Therefore, any mistake as to its terms is controlled by *Krull*. So if, as per *Villarreal*, the search pursuant to the statute without a warrant violated the Fourth Amendment, then there is a Fourth Amendment violation. An officer's reasonable belief that the statute allowed the blood draw without a warrant does not make the search reasonable. The question then becomes whether the remedy of suppression is

appropriate. *Cf. Davis v. United States*, 131 S. Ct. 2419, 2431 (2011) ("the retroactive application of a new rule of substantive Fourth Amendment law raises the question whether a suppression remedy applies . . . ."). Given the statute and the Court's statement in *Beeman v. State*,[1] that the statute operates independently from a warrant, it would be appropriate to conclude that the federal good-faith exception applies.

Also, if it is ultimately determined that the statute has always had a warrant requirement, then any officer who executed a search under the statute without a warrant violated the Fourth Amendment. The application of the exclusionary rule becomes questionable, however. If an officer executed a search pursuant to the statute, but under a reasonably mistaken belief that it did not require a warrant, then the good faith exception should apply. But if the officer should have known that the statute included a warrant requirement, it cannot be said that he reasonably relied on the statute at all. Instead, the officer acted outside the scope of the statute, and the good faith exception would be inapplicable.

---

[1] 86 S.W.3d 613, 615 (Tex. Crim. App. 2002); *see also State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011) ("In light of *Beeman*, the court of appeals was correct to hold that compliance with Section 724.017 would provide one way to establish reasonableness under the Fourth Amendment.").

**Reasonableness Framework**

Further analysis of the application of the reasonableness framework to warrantless mandatory blood draws under the implied consent law's repeat offender provision may also be helpful.

Whether a warrantless blood-draw conducted pursuant to the repeat-offender implied consent mandatory blood-draw provision is reasonable presents a "Goldilocks" predicament.  The well-established warrant exceptions are not "just right" for one reason or another.  But shoe-horning facts into an established exception is unnecessary.  Reasonableness—the touchstone of the Fourth Amendment—is the "just right" theory.  *See e.g., Schmerber*, 384 U.S. at 768; *Sitz*, 496 U.S. at 450; *Segundo*, 270 S.W.3d at 98; *McGee*, 105 S.W.3d at 616.  Consideration of the various factors borrowed from precedent assessing reasonableness in other contexts establishes that a Section 724.012(b)(3)(B) blood draw does not violate the Fourth Amendment.

**Reduced Expectation of Privacy**

The following provide a basis for recognizing a reduced expectation of privacy in this context:

- Use of a vehicle on public roadways. *See New York v. Class*, 475 U.S. 106, 113 (1986) (reduced expectation of privacy expected in automobile due to pervasive regulation); *Skinner v. Ry. Labor Executives' Ass'n*,

489 U.S. 602, 627 (1989) ("the expectations of privacy of covered employees are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety . . . .").

- Arrest. *See Riley v. California*, 134 S. Ct. 2473, 2485 (2014) (reduced privacy expectations by virtue of arrest); *Maryland v. King*, 133 S. Ct. 1958, 1979 (2013) ("A brief intrusion of an arrestee's person is subject to the Fourth Amendment, but a swab of this nature does not increase the indignity already attendant to normal incidents of arrest.").

- Citizens are presumed to know the law. *Cheek v. United States*, 498 U.S. 192 (1991); *see also United States v. Biswell*, 406 U.S. 311, 315-16 (1972) (administrative search of firearms business reasonable because owner was aware of statutory authorization and time, place, scope limitations).

- Repeat offender status. *Cf. Griffin v. Wisconsin*, 483 U.S. 868, 873-80 (1987) (regulation authorizing warrantless search of probationer's home based on "reasonable grounds" that there is contraband); *United States v. Knights*, 534 U.S. 112, 119-22 (2001) (search of probationer reasonable based on a known and accepted *cart blanche* probation search condition and reasonable suspicion of wrongdoing); *Samson v. California*, 547 U.S. 843, 852-56 (2006) (suspicionless search of parolee's person reasonable based on a known and accepted *cart blanche* parole search condition).

  A person's non-probationary or parole status is not determinative. Convicted persons may be denied constitutional rights on the basis of a conviction, even where the sentence has been fully discharged. *See, e.g., Richardson v. Ramirez*, 418 U.S. 24, 52-55 (1974) (exclusion of felons from voting); *District of Columbia v. Heller*, 554 U.S. 570-626-27 (2008) (noting exclusion of laws barring felons from possessing firearms from its holding); *Kansas v. Hendricks*, 521 U.S. 346, 369 (1997) (civil commitment of dangerous sex-offenders).[2]

---

[2] A comprehensive list of collateral consequences that flow from a felony conviction in Texas can be found on the ABA's Criminal Justice Section's

**Limited Discretion**

The limited discretion afforded to an officer to draw blood and the limited circumstances under which he may do so also support the reasonableness of the statute.

- Probable Cause of a Chapter 49, Penal Code, offense is required. *Cf. King*, 133 S. Ct. at 1970 (arrestee in valid police custody for serious offense supported by probable cause); *Griffin*, 483 U.S. at 873-80 ("reasonable grounds" required for search of probationer's home); *Knights*, 534 U.S. at 119-22 (reasonable suspicion of wrongdoing required for search of probationer' home); *Cupp v. Murphy*, 412 U.S. 291, 296 (1973) (fingernail scraping for readily destructible evidence reasonable when conducted pursuant to station-house detention and probable cause).

- Of those arrested for a Chapter 49 offense, the search authorization applies to only those with two prior DWI convictions. Because officers will generally not know which suspects qualify for a mandatory draw, it is highly unlikely that arrests under Chapter 64 will be made as a pretext for enforcing Section 724.012. Thus, in nearly all cases officers exercise no discretion in executing a mandatory draw. *Cf. King*, 133 S. Ct. at 1967 (DNA sample from all persons arrested for serious offenses); *Skinner*, 489 U.S. at 629-30 ("triggering event" mandating testing is unknown and cannot be predicted).

**The Test is Reasonable and Limited**

The reasonableness of the method is well-established, and the proposed use is more limited than in other cases upheld by the Supreme Court.

---

National Inventory of Collateral Consequences of Conviction at http://www.abacollateralconsequences.org/search/?jurisdiction=45.

- Blood draws are presumptively reasonable, and the amount of blood taken is small. [3] *See State v. Johnston*, 336 S.W.3d 649, 659 (Tex. Crim. App. 2011) (holding that blood draws are reasonable and noting that a small sample is taken).

- The analysis is limited to the discovery of intoxicants. *Compare with Riley*, 134 S. Ct. at 2489 (data contained on cell phone quantitatively and qualitatively different than any other object); *King*, 133 S. Ct. at 1967 (DNA for identification and unsolved crime comparison); *Segundo v. State*, 270 S.W.3d 79, 98 (Tex. Crim. App. 2008) (DNA collection to assist investigating and prosecuting sex-related offenses and other cases in which biological evidence was recovered); *McGee v. State*, 105 S.W.3d 609, 617-18 (Tex. Crim. App. 2003) (visual body cavity inspection incident to arrest).

**Equally Vital Administrative Purpose**

Blood-draw evidence is equally vital to the enforcement of non-punitive, administrative license suspensions and refusals.[4] *Compare with New York v. Burger*, 482 U.S. 691, 713-14 (1987) (junkyard regulatory warrantless inspection scheme, which may be conducted by police, promotes the same goal as criminal laws by deterring auto theft); *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 449-50, 453-55 (1990) (upholding checkpoint to discover drunk-drivers as reasonable and noting that dispensing with individualized suspicion does not always require a non-criminal law-enforcement purpose).

**Exigency**

Finally, though insufficient on its own as a justification, there is always an element of exigency with respect to dissipation of intoxicants that should be

---

[3] Any fears about how the test is administered is an entirely separate question and therefore should not factor into the reasonableness of the authorization of the draw. *Johnston*, 336 S.W.3d at 663 (noting that use of force is generally reasonable).

[4] *See* TEX. TRANSP. CODE §§ 724.032-042.

considered. *See Skinner*, 489 U.S. at 623 (recognizing, among other things, that the delay needed to get a warrant may result in the destruction of evidence).

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals reverse the judgments of the Court of Appeals. But if the Court affirms, the State prays that the Court remand the cases so that the courts of appeals can decide if suppression is warranted.

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that according to the WordPerfect word count tool these documents contain 2,040 words, exclusive of the items excepted by TEX. R. APP. P. 9.4(i)(1).

/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that copies of the State's Post-Submission Supplemental Briefs  have been served on January 21, 2015, via certified electronic service provider to:


Hon. Richard Kennedy
Rusk County Courthouse
115 North Main Street
Henderson, Texas 75652
rkennedy@co.rusk.tx.us


Hon. Ebb B. Mobley
422 North Center Street
P.O. Box 2309
Longview, Texas 75606
ebbmob@aol.com


/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney